## WESTERN UNION TELEGRAPH CO. *v.* PENDLETON.

ERROR TO THE SUPREME COURT OF THE STATE OF INDIANA.

Argued April 27, 1887. — Decided May 27, 1887.

The statutes of the state of Indiana, §§ 4176, 4178, Rev. Stat. Ind. 1881, which require telegraph companies to deliver despatches by messenger to the persons to whom the same are addressed or to their agents provided they reside within one mile of the telegraphic station or within the city or town ir which such station is, are in conflict with the clause of the Constitution of the United States which vests in Congress the power to regulate commerce among the states, in so far as they attempt to regulate the delivery of such despatches at places situated in other states.

The authority of Congress over the subject of commerce by telegraph with foreign countries or among the states being supreme, no state can impose an impediment to its freedom, by attempting to regulate the delivery in other states of messages received within its own borders.

The reserved police power of a state under the Constitution, although difficult to define, does not extend to the regulation of the delivery at

points without the state of telegraphic messages received within the state; but the state may, within the reservation that it does not encroach upon the free exercise of the powers vested in Congress, make all necessary provisions in respect of the buildings, poles and wires of telegraph companies within its jurisdiction, which the comfort and convenience of the community may require.

THE statute of Indiana declared that " Every electric telegraph company, with a line of wires wholly or partly in this state, and engaged in telegraphing for the public, shall, during the usual office, hours, receive despatches, whether from other telegraphing lines or from individuals ; and on payment or tender of the usual charge, according to the regulations of such company, shall transmit the same with impartiality and good faith, and in the order of time in which they are received, under penalty, in case of failure to transmit, or if postponed out of such order, of ɩne hundred dollars, to be recovered by the person whose despatch is neglected or postponed : *Provided, however,* That arrangements may be made with the publishers of newspapers for the transmission of intelligence of general and public interest out of its order, and that communications for and from officers of justice shall take precedence of all others." § 4176, Rev. Stat. Ind. 1881. And that " such companies shall deliver all despatches, by a messenger, to the persons to whom the same are addressed, or to their agents, on payment of any charges due for the same : *Provided,* such persons or agents reside within one mile of the telegraphic station or within the city or town in which such station is." § 4178, Ibid.

The present action was brought by William Pendleton, the plaintiff below, to recover of the Western Union Telegraph Company the penalty of one hundred dollars prescribed by the above statute, for failing to deliver at Ottumwa, in Iowa, a message received by it in Indiana for transmission to that place. The complaint, as finally amended, alleged that the defendant below, the Western Union Telegraph Company, was a corporation organized and subsisting under the laws of Indiana, with a line of wires from Shelbyville, in that state, to Ottumwa, in Iowa ; that on the 14th of April, 1883, at

thirty-five minutes past five o'clock in the afternoon, at which time the company was engaged in telegraphing for the public, the plaintiff delivered to its agent at its office in Shelbyville, the following telegram for transmission to its office in Ottumwa, viz. :

"April 14th, 1883.
" To Rosa Pendleton, care James Harker,
            near City Graveyard, Ottumwa, Iowa.
  " Have you shipped things? If not, don't ship. Answer quick.
                        " Wm. Pendleton." ;

that upon its delivery, the plaintiff paid the agent sixty cents, being the amount of the charge required for its transmission from Shelbyville to Ottumwa ; that, without any fault or interference on his part, the company, after transmitting the message to Ottumwa, where it was received at half-past seven in the afternoon of that day, failed to deliver it either to Rosa Pendleton or to James Harker, whereby the plaintiff sustained damage and the defendant became liable for $100, under the statute of Indiana ; for which sum plaintiff demanded judgment.

To this complaint the company answered, admitting the receipt of the telegram as alleged, and setting up that it transmitted the message with impartiality and good faith, in the order of time in which it was received, and without delay, to its office in Ottumwa, Iowa, where it was received, as alleged, at half-past seven of that day ; that James Harker, to whose care the message was directed, lived more than one mile from the telegraph station at Ottumwa ; that, in accordance with the usual custom of the office, the message was, without delay, placed in the post office of that town, with proper stamp thereon, and duly addressed ; and that the telegram was received by the person to whom it was addressed on the following morning, April 15, 1883, at about nine o'clock.

The answer further set forth that the duties and liabilities of telegraph companies in Iowa, and the transmission and delivery of the telegrams within the state, were regulated by a

special statute of that state, which was as follows, viz.: "Any person employed in transmitting messages by telegraph must do so without unreasonable delay, and any one who wilfully fails thus to transmit them, or who intentionally transmits a message erroneously, or makes known the contents of any message sent or received to any person except him to whom it is addressed, or to his agent or attorney, is guilty of a misdemeanor. The proprietor of a telegraph is liable for all mistakes in transmitting messages made by any person in his employment, and for all damages resulting from a failure to perform any other duties required by law;" that by that statute the defendant was not required to deliver telegrams by messenger to the persons to whom they were addressed; that in the city of Ottumwa it had established a certain district within which it delivered telegrams by messenger; and that on the receipt of the telegram in question at Ottumwa it was ascertained that Harker, to whose care it was addressed, did not reside within the delivery district, but outside of it, and more than one mile from the defendant's office, and that, in accordance with the custom and usage of the office, and in order to facilitate the delivery of the message, a copy of the telegram was promptly placed in the post office at Ottumwa, with proper address, and delivered as stated above.

To this answer the plaintiff demurred; the Circuit Court of the state sustained the demurrer; and, the defendant electing to stand upon its answer, judgment was rendered for the plaintiff for $100, which, on appeal to the Supreme Court of the state, was affirmed; and the company brought the case here for review.

*Mr. Augustus L. Mason* for plaintiff in error.

*Mr. Joseph E. McDonald* and *Mr. John M. Butler* for same submitted on their brief.

I. The business of telegraphing from one state to another is interstate commerce within the meaning of the 8th Section of the 1st Article of the Constitution of the United States.

The clause of the Constitution in question, which has been

frequently held by this court to be among the most important grants of power contained in the Constitution, and conferred by it on the Federal government, is as follows: " The Congress shall have power . . . to regulate commerce with foreign nations, and among the several states, and with the Indian tribes." The question as to whether the business of transmitting telegrams from one state to another, is interstate commerce within the scope of the above Constitutional provision has already been twice before this court. In *Telegraph Co.* v. *Texas,* 105 U. S. 460, the court said: " In *Pensacola Telegraph Co.* v. *Western Union Telegraph Co.,* 96 U. S. 1, this court held that the telegraph was an instrument of commerce, and that telegraph companies were subject to the regulating power of Congress in respect to their foreign and interstate business. A telegraph company occupies the same relation to commerce as a carrier of messages, that a railroad company does as a carrier of goods. Both companies are instruments of commerce, and their business is commerce itself. They do their transportation in different ways, and their liabilities are in some respects different, but they are both indispensable to those engaged to any considerable extent in commercial pursuits."

II. The power of Congress to regulate interstate commerce is exclusive in all cases where the subject over which the power is exercised is in its nature national or admits of one uniform system or plan of regulation. The inaction of congress upon such a subject is equivalent to a declaration that it shall be free from all state regulation or interference. *Gloucester Ferry Co.* v. *Pennsylvania,* 114 U. S. 196; *Brown* v. *Houston,* 114 U. S. 622; *Pickard* v. *Pullman Southern Car Co.,* 117 U. S. 34; *Wabash, St. Louis & Pacific Railway* v. *Illinois,* 118 U. S. 557; *Walling* v. *Michigan,* 116 U. S. 446; *Corson* v. *Maryland,* 120 U. S. 502; *Case of the State Freight Tax,* 15 Wall. 232; *Cooley* v. *Port Wardens,* 12 How. 299; *Gilman* v. *Philadelphia,* 3 Wall. 713; *Hall* v. *De Cuir,* 95 U. S. 485, 497; *Railroad Co.* v. *Husen,* 95 U. S. 465.

III. The subject over which the power of regulation is attempted to be exercised in this case is in its nature national,

and properly admits only of one uniform system or plan of regulation.

The particular subject over which the power of regulation is attempted to be exercised in this case by the state of Indiana is the manner and order of transmission and delivery of telegrams within the state of Iowa, which have been sent from points within the state of Indiana. The mere statement of such a claim of power must carry to the mind the conviction that no such power exists. If Indiana has the right to pre-scribe, under penalty, for failure, the manner and order of transmission and delivery, within the state of Iowa, of tele-grams sent from Indiana, every other state has the same right with regard to telegrams originating within its own bounda-ries. The Western Union Telegraph Company is engaged in interstate commerce. Its business is interstate commerce. If that business is to be hampered, restricted and burdened by state legislation of this character, which attempts to impress upon a telegram, originating within the state, certain rules regulating its transmission and delivery, which follow the tele-gram into whatever state it may go, a conflict and confusion must arise which would be fatal to the business. Operators and agents would find it impossible to remember or to observe the rules and regulations of the various states according to which telegrams, originating from the respective states, must be transmitted and delivered. Heavy penalties must, at every step, be incurred, in spite of the utmost good faith. Conflicts of law would necessarily arise, to determine which, no com-petent tribunal could be found. The Indiana legislature has enacted this statute, which prescribes under penalty, that all telegrams shall be transmitted in the following order : First, communications for or from officers of justice ; second, tele-grams containing news of general interest ; third, all other telegrams must be transmitted and delivered in the order in which they are received. If Indiana has the power to enact and enforce such a law in regard to interstate telegrams, then every other state has an equal right to prescribe a different order for the transmission of telegrams and to enforce it by penalties. *Hall* v. *De Cuir*, 95 U. S. 465, 485.

The recent cases of this court upon the subject of interstate commerce hereinbefore cited, uniformly hold that interstate railroad business and the transportation by rail across the country, of freight and passengers, is a subject national in its nature, and admits only of a uniform plan of regulation. This court has jealously guarded such interstate commerce from the regulation by various states. The subject of interstate telegraph business is one coördinate with railroad transportation, and equally with it, a subject national in its nature and admitting only of one uniform plan of regulation. *Telegraph Co.* v. *Texas*, 105 U. S. 460, 466.

What has been said as to inevitable conflicts in law, should the power of a state to regulate by statute the order of transmission of interstate telegrams be sustained, applies with equal force to statutes regulating the mode of delivery of telegrams. A telegram must be delivered. Without it the transmission amounts to nothing. It is easy to see that different state legislatures might differ in their enactments as to modes of delivery and enforce such rules by penalties for their violation. Indeed, in the case at bar, the Indiana legislature prescribed a mode of delivery which the Iowa legislature has by its silence impliedly declared to be unwise or unnecessary. It is not a question here as to the reasonableness of the statute in question. If such a statute can be enacted at all, its provisions will rest in the discretion of the state. It is idle to say that the interests of the state would prevent oppressive legislation. This precise point was adverted to by Mr. Justice Field in the case of *Gloucester Ferry Co.* v. *Pennsylvania*, 114 U. S. 196, on page 205. He said among other things: "Those engaged in foreign and interstate commerce are not bound to trust to its [the state's] moderation in that respect; they require security, and they may rely on the power of Congress to prevent any interference by the state until the act of commerce, the transportation of passengers and freight, is completed."

In the case of *Wabash, &c., Railway Co.* v. *Illinois*, 118 U. S. 557, above cited, the principle therein stated is so applicable to the case at bar that we quote from page 572. " It is

not the railroads themselves that are regulated by this act of the Illinois legislature so much as the charges for transportation, and, in language just cited, if each one of the states through whose territories these goods are transported can fix its own rules for prices, for modes of transit, for times and modes of delivery, and all other incidents of transportation to which the word 'regulation' can be applied, it is readily seen that the embarrassment upon interstate transportation, as an element of interstate commerce, might be too oppressive to be submitted to. 'It was,' in the language of the court cited above, 'to meet just such a case that the commerce clause of the Constitution was adopted.'"

It seems apparent, from a moment's thought, that a state cannot have the power to regulate the transmission or delivery of interstate telegrams even within its own borders. Take as an illustration the Indiana statute requiring delivery by messenger. To impose this upon telegrams coming into the state from without, is to impose a burden upon the business, and is equivalent to imposing a tax upon each message. The messenger service must be paid for, either by the telegraph company or its patrons. In the case of *Gloucester Ferry Co.* v. *Pennsylvania, supra,* this court expressly held, "that a tax upon receiving and landing passengers and freight is a tax upon their transportation; that is, upon the commerce between the two states involved in the transportation."

The whole field of the regulation of the transmission and delivery of interstate telegrams, should be kept free from interferences by the states by means of statutes of the character of the one involved. This principle would dispose of this case, but a much narrower principle will also dispose of it. This case presents the question of the regulation, by a state, of the transmission and delivery of telegrams, outside of its own borders.

IV. The Supreme Court of Indiana saw fit to place its decision in this case upon the footing of an exercise of the police power of the state. We do not think any such claim for the extent of the police power can be found in any other reported decision. Certainly it seems contrary to fundamental principles of law.

It will be kept in mind that the act or omission alleged to constitute the violation of the Indiana penal statute occurred wholly outside of the territory of the state of Indiana, and inside of the territory of the state of Iowa.

Acts rendered penal by law are penal only because the law of the place where committed makes them so. *Graham* v. *Monsergh,* 22 Vt. 543; *Richardson* v. *Burlington,* 33 N. J. Law (4 Vroom), 190; *Slack* v. *Gibbs,* 14 Vt. 357; *Nashville, &c., Railroad* v. *Eaken,* 6 Coldwell, 582: *Crowley* v. *Panama Railroad,* 30 Barb. 99; *Leonard* v. *Columbia Steam Nav. Co.,* 84 N. Y. 48; *Shedd* v. *Moran,* 10 Bradwell (App. Ill.) 618.

"All laws are co-extensive and only co-extensive with the political jurisdiction of the law-making power." *McCarthy* v. *Chicago & Rock Island Railroad,* 18 Kansas, 46, and authorities above cited.

In this connection we beg leave to call attention to the following quotation from Cooley's Constitutional Limitations, which Mr. Justice Field made in the opinion in the case of *Gloucester Ferry Co.* v. *Pennsylvania,* 114 U. S. 196, on page 215, and which is also quoted in several other recent decisions by this court. It is as follows:

"It is not doubted that Congress has the power to go beyond the general regulations of commerce which it is accustomed to establish, and to descend to the most minute directions if it shall be deemed advisable, and that to whatever extent ground shall be covered by those directions, the exercise of state power is excluded. Congress may establish police regulations as well as the states, confining their operations to the subjects over which it is given control by the Constitution." Cooley's Constitutional Limitations, 732.

The whole subject of the transmission and delivery of interstate telegrams is, it seems, a subject national in its character and admits safely of only one uniform plan of regulation. But however it may be as to the regulation by a state of the transmission and delivery of such telegrams within its own boundaries, it seems certain that no power exists in a state to regulate the mode and order of transmission and delivery of interstate telegrams, starting from points within its own terri-

t͡r͡y, after such telegrams have passed the state line and are within the boundaries of other states.

No appearance for defendant in error.

Mr. Justice Field, after stating the case as above, delivered the opinion of the court.

The contention of the Western Union Telegraph Company is that the law of Indiana is in conflict with the clause of the Constitution vesting in Congress the power to regulate commerce among the states.

In *Telegraph Co.* v. *Texas,* 105 U. S. 460, 464, it was decided by this court that intercourse by the telegraph between the states is interstate commerce. Its language was: "A telegraph company occupies the same relation to commerce as a carrier of messages, that a railroad company does as a carrier of goods. Both companies are instruments of commerce, and their business is commerce itself. They do their transportation in different ways, and their liabilities are in some respects different, but they are both indispensable to those engaged to any considerable extent in commercial pursuits."

Although intercourse by telegraphic messages between the states is thus held to be interstate commerce, it differs in material particulars from that portion of commerce with foreign countries and between the states which consists in the carriage of persons and the transportation and exchange of commodities, upon which we have been so often called to pass. It differs not only in the subjects which it transmits, but in the means of transmission. Other commerce deals only with persons, or with visible and tangible things. But the telegraph transports nothing visible and tangible; it carries only ideas, wishes, orders, and intelligence. Other commerce requires the constant attention and supervision of the carrier for the safety of the persons and property carried. The message of the telegraph passes at once beyond the control of the sender, and reaches the office to which it is sent instantaneously. It is plain, from these essentially different characteristics, that

the regulations suitable for one of these kinds of commerce would be entirely inapplicable to the other.

In the consideration of numerous cases, in which questions have arisen relating to ordinary commerce with foreign countries and between the states, this court has reached certain conclusions as to what subjects of commerce the regulation of Congress is exclusive, and indicated on what subjects the states may exercise a concurrent authority until Congress intervenes and assumes control. *Cooley* v. *Board of Wardens of the Port of Philadelphia*, 12 How. 299; *Gilman* v. *Philadelphia*, 3 Wall. 713; *Crandall* v. *Nevada*, 6 Wall. 35; *Welton* v. *State of Missouri*, 91 U. S. 275; *Henderson* v. *Mayor of New York*, 92 U. S. 259; *Inman Steamship Co.* v. *Tinker*, 94 U. S. 238; *Hall* v. *De Cuir*, 95 U. S. 485; *County of Mobile* v. *Kimball*, 102 U. S. 691; *Transportation Co.* v. *Parkersburgh*, 107 U. S. 691; *Gloucester Ferry Co.* v. *Pennsylvania*, 114 U. S. 196; *Wabash, St. Louis & Pacific Railway Co.* v. *Illinois*, 118 U. S. 557; and *Robbins* v. *Shelby Taxing District*, 120 U. S. 489, 493. But with reference to the new species of commerce, consisting of intercourse by telegraphic messages, this court has only in two cases been called upon to inquire into the power of Congress and of the state over the subject. In *Pensacola Telegraph Co.* v. *Western Union Telegraph Co.*, 96 U. S. 1, this court had before it the act of Congress of July 24, 1866, 14 Stat. 221, "to aid in the Construction of Telegraph Lines, and to secure to the Government the Use of the same for postal, military, and other Purposes," and it held that the act was constitutional so far as it declared that the erection of telegraph wires should, as against state interference, be free to all who accepted its terms and conditions, and that a telegraph company of one state accepting them could not be excluded by another state from prosecuting its business within her jurisdiction. In *Telegraph Company* v. *Texas*, 105 U. S. 460, from the opinion in which we have quoted above, it was held that a statute of Texas imposing a tax upon every message transmitted by a telegraph company doing business within its limits, so far as it operated on messages sent out of the state, was a regulation of foreign and interstate commerce, and, therefore, beyond the power of the state.

In these cases the supreme authority of Congress over the subject of commerce by the telegraph with foreign countries or among the states is affirmed, whenever that body chooses to exert its power; and it is also held that the states can impose no impediments to the freedom of that commerce. In conformity with these views the attempted regulation by Indiana of the mode in which messages sent by telegraphic companies doing business within her limits shall be delivered in other states cannot be upheld. It is an impediment to the freedom of that form of interstate commerce, which is as much beyond the power of Indiana to interpose, as the imposition of a tax by the state of Texas upon every message transmitted by a telegraph company within her limits to other states was beyond her power. Whatever authority the state may possess over the transmission and delivery of messages by telegraph companies within her limits, it does not extend to the delivery of messages in other states.

The object of vesting the power to regulate commerce in Congress was to secure, with reference to its subjects, uniform regulations, where such uniformity is practicable, against conflicting state legislation. Such conflicting legislation would inevitably follow with reference to telegraphic communications between citizens of different states, if each state was vested with power to control them beyond its own limits. The manner and order of the delivery of telegrams, as well as of their transmission, would vary according to the judgment of each state. Indiana, as seen by its law given above, has provided that communications for or from officers of justice shall take precedence, and that arrangements may be made with publishers of newspapers for the transmission of intelligence of general and public interest out of its order; but that all other messages shall be transmitted in the order in which they are received; and punishes as an offence a disregard of this rule. Her attempt, by penal statutes, to enforce a delivery of such messages in other states, in conformity with this rule, could hardly fail to lead to collision with their statutes. Other states might well direct that telegrams on many other subjects should have precedence in delivery within their limits over

some of these, such as telegrams for the attendance of physicians and surgeons in case of sudden sickness or accident, telegrams calling for aid in cases of fire or other calamity, and telegrams respecting the sickness or death of relatives.

Indiana also requires telegrams to be delivered by messengers to the persons to whom they are addressed, if they reside within one mile of the telegraph station, or within the city and town in which such station is; and the requirement applies, according to the decision of its Supreme Court in this case, when the delivery is to be made in another state. Other states might conclude that the delivery by messenger to a person living in a town or city being many miles in extent was an unwise burden, and require the duty within less limits; but if the law of one state can prescribe the order and manner of delivery in another state, the receiver of the message would often find himself incurring a penalty because of conflicting laws, both of which he could not obey. Conflict and confusion would only follow the attempted exercise of such a power. We are clear that it does not exist in any state.

The Supreme Court of Indiana placed its decision in support of the statute principally upon the ground that it was the exercise of the police power of the state. Undoubtedly, under the reserve powers of the state, which are designated under that somewhat ambiguous term of police powers, regulations may be prescribed by the state for the good order, peace, and protection of the community. The subjects upon which the state may act are almost infinite, yet in its regulations with respect to all of them there is this necessary limitation, that the state does not thereby encroach upon the free exercise of the power vested in Congress by the Constitution. Within that limitation it may, undoubtedly, make all necessary provisions with respect to the buildings, poles, and wires of telegraph companies in its jurisdiction which the comfort and convenience of the community may require.

It follows from the views expressed that

*The judgment of the court below must be reversed, and the cause remanded for further proceedings not inconsistent with this opinion; and it is so ordered.*