UNITED STATES v. FERGER et al. (two cases).*

(District Court, S. D. Ohio, W. D.    October 14, 1918.)

Nos. 1198, 1199.

COMMERCE ⬦⬦16—FORGING BILLS OF LADING—INTERSTATE COMMERCE.

 Act Aug. 29, 1916, c. 415, § 41 (Comp. St. § 8604u), penalizing the forgery of interstate and foreign bills of lading, etc., unconstitutionally exceeds Congress' power under the commerce clause, when applied to an entirely fictitious bill of lading having no connection with any actual or contemplated interstate commerce.

August Ferger, Thomas M. Dugan, and Robert H. Rasch were indicted for forging interstate bills of lading. On motions to quash and on demurrers. Indictments dismissed.

Stuart R. Bolin, U. S. Atty., of Columbus, Ohio, and Edward K. Bruce, Asst. U. S. Atty., of Cincinnati, Ohio, for the United States.

Sherman T. McPherson and John C. Hermann, both of Cincinnati, Ohio, for defendants.

HOLLISTER, District Judge. To the respective indictments in the above cases the defendants therein filed motions to quash and demurrers. Among others, the question is raised whether or not, as applicable to the facts stated in the indictments, the Congress had power to enact section 41 of the act relating to bills of lading in interstate and foreign commerce approved August 29, 1916 (39 Stat. 538, c. 415 [Comp. St. § 8604u]). If that question is decided in the negative, then all of the other questions become unimportant.

Section 41 reads:

"That any person who, knowingly or with intent to defraud, falsely makes, alters, forges, counterfeits, prints or photographs any bill of lading purporting to represent goods received for shipment among the several states or with foreign nations, or with like intent utters or publishes as true and genuine any such falsely altered, forged, counterfeited, falsely printed or photographed bill of lading, knowing it to be falsely altered, forged, counterfeited, falsely printed or photographed or aids in making, altering, forging, counterfeiting, printing or photographing or uttering or publishing the same, or issues or aids in issuing or procuring the issue of, or negotiates or transfers for value a bill which contains a false statement as to the receipt of the goods, or as to any other matter, or who, with intent to defraud, violates, or fails to comply with, or aids in any violation of, or failure to comply with any provision of this act, shall be guilty of a misdemeanor, and, upon conviction, shall be punished for each offense by imprisonment not exceeding five years, or by a fine not exceeding $5,000, or both."

Case No. 1198 contains 24 counts, the odd counts charging defendants with falsely making, forging, and counterfeiting the certain bill of lading in each count set forth at length, with intent to defraud, and in the same counts the defendants are charged with uttering and publishing, and aiding and assisting in uttering and publishing, the falsely forged and counterfeited bill of lading in each count set forth.

The even-numbered counts charge the defendants with having uttered and published as true and genuine the falsely forged and counterfeited

⬦⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Reversed 249 U. S. —, —, 39 Sup. Ct. 445, 447, 63 L. Ed. —, —.

bill of lading, a copy of which is set forth in each count, knowing it to be falsely forged and counterfeited, with intent to defraud, and that they did negotiate and transfer for value, and aided and assisted in negotiating and transferring for value, the falsely forged and counterfeited bills of lading, with the Second National Bank of Cincinnati, and charges that the falsely forged and counterfeited bills of lading then and there contained a false statement as to the receipt of the goods described therein, to wit, 80,000 pounds of corn.

Case No. 1199 contains one count charging the defendants named with conspiring to commit an offense against the United States, in that they agreed, with intent to defraud, to falsely make, forge and counterfeit, and aid in falsely making, forging and counterfeiting, bills of lading purporting to represent goods received at Fountaintown, in the state of Indiana, for shipment to Cincinnati, in the state of Ohio, and to utter and publish, and aid and assist in uttering and publishing, the falsely made, forged and counterfeited bills of lading, knowing them to be falsely made, forged and counterfeited, and to negotiate and transfer for value the falsely made, forged and counterfeited bills of lading, which falsely made, forged and counterfeited bills of lading were to contain false representations as to the receipt of goods for shipment, and that they, in furtherance of and to effect the object of their conspiracy, negotiated for and secured from the Second National Bank of Cincinnati a loan of $22,000 for the benefit of the Ferger Grain Company, of Cincinnati, and of the defendants, being interested as officers, stockholders and employés, and that the defendants gave as evidence of that indebtedness a demand note, copy of which is incorporated in the indictment.

The indictment further charges that, to further effect the purpose of the conspiracy, the defendants negotiated, transferred for value and delivered, and caused to be negotiated, transferred for value, and delivered to the Second National Bank of Cincinnati, as collateral security for such loan, 12 bills of lading, falsely made, forged and counterfeited, containing false representations as to receipt of goods, which bills of lading were of the standard form of order bill of lading approved by the Interstate Commerce Commission by Order No. 877 of June 27, 1908, all purporting to be issued by the Cincinnati, Hamilton & Dayton Railway Company, and which contained the following false statements and information: Dated at Fountaintown, Indiana, on the various dates set forth in the indictment. Received from W. D. Springer; consigned to order of W. D. Springer; destination, Cincinnati, Ohio; notify Ferger Grain Company at Cincinnati, Ohio. Route C., H. & D. "Description of contents and special marks: Corn. Weight 80,000 pounds" —the name of the agent being stated as W. E. Sheldon, and bearing the indorsements of W. D. Springer and the Ferger Grain Company, Thomas M. Dugan, Secretary.

It was agreed at the argument and assumed in the briefs of counsel that the so-called bills of lading were fictitious, in that there was no actual consignor or consignee, and that they did not relate to any shipment or contemplated shipment of corn whatsoever. This fact so agreed upon in open court is to be read into the indictments.

Such power as Congress had to enact section 41 is derived from the commerce clause of the Constitution (article 1, § 8). Counsel for defendants contend that there must be some commerce actually existing, or at least in contemplation, to be regulated, so as to bring into exercise the power delegated to the Congress by the Constitution.

The government claims that since, under the commerce clause, Congress has power over the instrumentalities through which interstate commerce is carried on and may prescribe a uniform bill of lading, that it necessarily has power to prevent the imposition on the public of papers purporting to be genuine bills of lading, although they in fact represent no shipper or consignee or goods to be shipped in interstate commerce, and are wholly fictitious.

Although the exercise of power of the Congress under the commerce clause has been held to include acts whose purpose involved immorality, and thus contrary to good morals and the public welfare, such as the Lottery Case, 188 U. S. 321, 23 Sup. Ct. 321, 47 L. Ed. 492, and the White Slave Cases, 227 U. S. 308 et seq., 33 Sup. Ct. 281, 57 L. Ed. 523, 43 L. R. A. (N. S.) 906, Ann. Cas. 1913C,. 905, yet in these illustrations the foundation of the exercise of the power was the existence in the one case of interstate shipments of lottery tickets, and in the others the interstate transportation of persons. In these the exercise of police power was incidental only.

A bill of lading is nothing more than a contract and a receipt. Pollard v. Vinton, 105 U. S. 7, 8 (26 L. Ed. 998). In that case Mr. Justice Miller said:

"The receipt of the goods lies at the foundation of the contract to carry and deliver. If no goods are actually received, there can be no valid contract to carry or to deliver."

These bogus bills of lading were nothing but pieces of paper, fraudulently inscribed to represent a real contract between real people and the actual receipt of goods for interstate shipment. They were not receipts for goods to be shipped; they did not affect interstate commerce, directly or indirectly; they did not obstruct it or interfere with it in any manner, and had nothing whatsoever to do with it, or with any existing instrumentality of it. That they were inscribed so as to purport to relate to interstate shipments was nothing else than a fraud upon such persons as innocently took them, as collateral or otherwise. The execution of them and their use for obtaining money under false pretenses was nothing other than a crime of the kind cognizable by the criminal legislation of the states, and a matter with which the Congress, in the exercise of its power to regulate commerce, is not concerned.

The principle that our federal government is one of enumerated powers is universally admitted. Chief Justice Marshall in McCulloch v. Maryland, 4 Wheat. *316, *405, 4 L. Ed. 579. The powers possessed by the national government are only such as have been delegated to it. The states have all powers but such as they have surrendered (Gilman v. Philadelphia, 3 Wall. 713, 725, 18 L. Ed. 96), which is but stating what the Constitution declares in article 9:

"The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people."

And in article 10:

"The powers not delegated to the United States by the Constitution, nor prohibited by it to the states, are reserved to the states respectively, or to the people."

The states have not surrendered, and therefore retain, their power to enact laws to prevent and punish such acts as these defendants are charged with, and have not delegated to the Congress the power to pass laws to prevent and punish acts, however immoral, which have no relation whatever to the subjects-matter included within any of the powers delegated. "In the American constitutional system, the power to establish the ordinary regulations of police has been left with the individual states, and cannot be assumed by the national government," says Judge Cooley, in Const. Lim. 574. See Patterson v. Kentucky, 97 U. S. 501, 503, 24 L. Ed. 1115; Keller v. U. S., 213 U. S. 138, 144, 29 Sup. Ct. 470, 53 L. Ed. 737, 16 Ann. Cas. 1066.

It was said in U. S. v. Knight, 156 U. S. 1, 13, 15 Sup. Ct. 254, 39 L. Ed. 325:

"The regulation of commerce applies to the subjects of commerce and not to matters of internal police."

We are not discussing the forging or counterfeiting of an existing, genuine bill of lading, having to do with an actual shipment made, or about to be made, or even in contemplation, and have nothing to say about the validity of section 41 with respect thereto.

In all of the definitions the Supreme Court has given to "interstate commerce," beginning with Gibbons v. Ogden, 9 Wheat. 1, *197, 6 L. Ed. 23, and up to the Child Labor Case, 247 U. S. 251, 38 Sup. Ct. 529, 62 L. Ed. 1101 (opinion delivered June 3, 1918), that which was described was something tangible, or, if not tangible, as in the Telegraph Cases (Pensacola Telegraph Co. v. Western Union Telegraph Co., 96 U. S. 1, 24 L. Ed. 708; Telegraph Co. v. Texas, 105 U. S. 460, 26 L. Ed. 1067; Western Union Telegraph Co. v. Pendleton, 122 U. S. 347, 7 Sup. Ct. 1126, 30 L. Ed. 1187; Western Union Telegraph Co. v. James, 162 U. S. 650, 654, 16 Sup. Ct. 934, 40 L. Ed. 1105), was something, even if only "ideas, wishes, orders, and intelligence" (Lottery Case, 188 U. S. 321, 351, 352, 23 Sup. Ct. 321, 325 [47 L. Ed. 492]), carried from one state to another by wire, that was actually transmitted across state borders, or had definite relation to one or the other of these. It would be useless to refer at length to all or any considerable number of the many cases.

While in the nature of things the Supreme Court could not make, or, at any rate, would not attempt to make, in any case, a definition so comprehensive as to cover all situations, yet from what the court has said, and on principle, the inevitable deduction must be made that acts such as are described in the indictments, which constitute in themselves a mere fraud, acts which do not involve any real transaction whatever, either as to parties or subject-matter, although purporting to include both, would not be regarded by the Supreme Court, from any stand-

point whatever, as interstate commerce, or as having any relation thereto under the commerce clause. Such legislation is not a regulation of commerce between the States.

Counsel for the government say that the laws providing for the punishment of counterfeiting and uttering and publishing counterfeit coin and currency of the United States present a complete analogy. There is no analogy. Under clause 5 of section 8, art. 1, of the Constitution, power is delegated to the Congress to coin money, and by clause 6 of section 8 to provide for punishment for counterfeiting the securities and current coin of the United States.

The question made at the beginning of this discussion must be decided in favor of the defendants, and the holding made that the Congress has not the power, under the commerce clause, to prescribe a punishment under the circumstances of this case, and if the Congress has sought to do so, the attempt is futile, because without authority.

An order may be taken dismissing these indictments.