CHRIS PEDERSEN, Individually and as Agent and Representative for and in Behalf of Himself and All Other Employees of the Defendant Similarly Situated, Plaintiff, *v.* J. F. FITZGERALD CONSTRUCTION Co., Defendant.

Supreme Court, Trial and Special Term, Columbia County, February 1, 1940.

*Ransom H. Gillett*, for the plaintiff.

*Whalen, McNamee, Creble & Nichols* [*Charles E. Nichols* and *Henry E. Foley* of counsel], for the defendant.

BERGAN, J. The first problem presented is whether plaintiff, in the stipulated facts under which he was employed by defendant, was "engaged in commerce or in the production of goods for commerce" within the scope of the Fair Labor Standards Act of 1938 (U. S. Code, tit. 29, § 207, subd. [a]). The definition of the word "goods" is quite inclusive (§ 203, subd. [i]). It is conditioned, in the sense used in subdivision (a) of section 207, however, by the word "commerce," and in turn, by the statutory definition of that word in subdivision (b) of section 203. That definition is that commerce is "trade, commerce, transportation, transmission, or communication among the several States." This statutory definition is in general harmony with the commonly accepted sense of the word in current usage.

The construction of new abutments under two bridges, and the repair of the substructures under two other bridges, was not, I think, the "production of goods for commerce." Broadly as the statutory definition may be viewed, the abutments and the substructures of the four bridges cannot be treated as goods, wares, products, commodities or merchandise and certainly were not "articles or subjects of commerce." They were never themselves to be the subjects of trade or commerce or transportation, or transmission or communication among the several States. The plain intent of the statute and the common and usual sense in which the words employed and their definition in the statute are to be construed excludes from the phrase "production of goods for commerce" the construction of the permanent, stationary abutments and substructures of bridges here stipulated.

The terms used are not, indeed, static concepts; they have been made elastic to meet legislative views of the necessities of changing national conditions. But I have seen no authoritative extension of definition beyond common understanding and usage in the scope here urged by the plaintiff, and I conclude that plaintiff, under the facts stipulated, was not engaged in the production of goods for commerce.

The question remaining for determination is whether plaintiff was, within subdivision (a) of section 207, "engaged in commerce," which means, of course, "among the several States." This question is more debatable than the first one considered, but the answer, too, must be given in the negative.

The railroad company for which defendant was retained is engaged in interstate commerce. The bridges for which the abutments and substructures were built were subsequently to be used by the railroad in such commerce. The stipulation concedes that the new abutments, while being built by defendant, did not carry the tracks of the railroad, but that the bridges under which the substructures were being repaired did carry the tracks of the railroad during such operation.

Since there is no attempt in the stipulated facts to segregate the overtime hours attributed to the abutment operations from those attributed to the substructure operations, and since about two-thirds of the total work was comprised of building the abutments, the overtime work may be more readily attributed to the abutments than to the substructures. Indeed, for all that appears, all of it may be attributed to the former, but in any event the result reached will be the same.

The nature of this work performed by the defendant, not itself engaged in interstate commerce, cannot be treated as such commerce. The business which it performed upon these bridges was local in character and was wholly separated from interstate commerce. (*Browning* v. *City of Waycross*, 233 U. S. 16, 22.) The defendant, and hence the plaintiff, too, seem to be engaged in the kind of undertaking for a railroad in which the signal company was engaged in *General Railway Signal Co.* v. *Virginia ex rel. State Corp. Comm.* (246 U. S. 500). It is no answer to say that this was a tax case. The principle was stated, and it is the same, however the controversy arose. Mr. Justice McReynolds said (at p. 510), " We think the recited facts clearly show local business separate and distinct from interstate commerce within the doctrine announced and applied in *Browning* v. *Waycross*, 233 U. S. 16."

Whatever might be said of the situation that would result if the plaintiff were employed by the railroad company itself in repairing the substructures of the bridges it was actually using in interstate commerce, it would seem that the construction of the abutments, prior to their actual and physical use in interstate commerce, even by the railroad itself, would not result in the engagement of plaintiff in interstate commerce. So it was held in respect of a tunnel, partially bored " and hence not in use as an instrumentality of interstate commerce." (*Raymond* v. *Chicago, Milwaukee & St. Paul R. Co.*, 243 U. S. 43, 44.)

Where a railroad engaged in interstate commerce itself repaired a bridge being used as an instrumentality of such commerce, an employee engaged in such an operation is engaged in interstate commerce. (*Pedersen* v. *Delaware, Lackawanna & Western R. R.*

*Co.*, 229 U. S. 146.) But this was upon the theory as the court pointed out (at p. 151) that the work was not being done independently of the interstate commerce in which the railroad was engaged, but was so closely connected with it as to be a part of it. No such theory applies to the work of this defendant which was not engaged in interstate commerce at all.

Judgment for defendant dismissing the complaint upon the merits. Submit decision and judgment on or before February 2, 1940.