CHRIS PEDERSEN, Individually and as Agent and Representative for and in Behalf of Himself and All Other Employees of the Defendant Similarly Situated, Appellant, *v.* J. F. FITZGERALD CONSTRUCTION COMPANY, Respondent.*

Third Department, November 12, 1941.

*Affg. 173 Misc. 188.

*Wilson & Connor* [*William M. Eaton* and *William E. J. Connor* of counsel], for the appellant.

*Whalen, McNamee, Creble & Nichols* [*Charles E. Nichols* and *Henry E. Foley* of counsel], for the respondent.

*Gerard D. Reilly, Solicitor, Irving J. Levy, Assistant Solicitor*, in Charge of Litigation, *Arthur E. Reyman, Regional Attorney*, United States Department of Labor [*Charles R. Reynolds, Jr.*, of counsel], for Philip B. Fleming, Administrator of the Wage and Hour Division, United States Department of Labor, as *amicus curiæ*.

SCHENCK, J. Two questions are here presented: (a) Were the several persons represented by plaintiff engaged in interstate commerce; (b) were these several persons, hereinafter referred to as plaintiffs, engaged in the production of goods for commerce.

The appeal here is taken from a judgment dismissing the complaint upon the merits in an action brought by plaintiff Pedersen, individually, and as representative of certain other former employees of defendant, to recover overtime wages and an equivalent amount as liquidated damages pursuant to the provisions of sections 7 and 16 of the Federal Fair Labor Standards Act of 1938 (U. S. Code, tit. 29, chap. 8, §§ 201–219). The action was submitted to the court below upon an agreed statement of facts. As lessee of the Boston and Albany Railroad the New York Central Railroad Company operated trains between New York and Massachusetts over four bridges located on the railroad right of way in the town of Chatham. In September, 1938, the abutments of two of said bridges were completely destroyed by flood, and the substructures of the other two bridges were damaged. The defendant is an independent contractor engaged in general construction work. He entered into a contract with the railroad company for the construction of new abutments under the two bridges destroyed and for the repairing of the substructures

of the two damaged bridges. Plaintiffs were employed by defendant on this work. During the erection of the new abutments and the completion of the repairs to the substructures of the other bridges, the tracks of the railroad were carried on the superstructures of all of the four bridges, but the said new abutments were not used to support such superstructures nor the railroad bed, nor were said abutments used by the railroad company in any way during the course of the work being performed by defendant under its said contract.

While the railroad company was obviously engaged in interstate commerce, the defendant was an independent contractor employed by the railroad to perform work clearly local in its character and separate and distinct from such commerce. (*Browning* v. *Waycross*, 233 U. S. 16, 22.) Plaintiffs were at no time employed by the railroad company. We have no such situation as found in *Pedersen* v. *Delaware, Lackawanna & Western R. R. Co.* (229 U. S. 146), for there the work was being prosecuted by a railroad engaged in interstate commerce and the work was so clearly connected with it as to be a part thereof. Here, the defendant was not engaged in interstate commerce and was simply performing local construction work which was neither an interstate occupation nor commerce. (*General Railway Signal Co.* v. *Virginia*, 246 U. S. 500.) Interstate commerce means interstate commercial intercourse, and while defendant, pursuant to its contract, was engaged in work upon an instrumentality of interstate commerce, the performance of such work does not constitute such commerce. (*McKee* v. *Ohio Valley Electric R. Co.*, 78 W. Va. 131; 88 S. E. 616.)

The remaining question as to whether or not plaintiffs were engaged in the production of goods for commerce must necessarily be answered in the negative. The construction of new abutments and the making of repairs to the substructures of the railroad bridges did not constitute " the production of goods for commerce " within the meaning of the act. From the definition of the term " goods " as found in the act, no inference may be drawn that these plaintiffs were engaged in the production of goods, products or commodities for commerce. Plaintiffs were not employed in producing, manufacturing, mining, handling or in any other manner working on goods for commerce, nor performing any act of production as contemplated by section 3 of the act. In performing work upon these abutments and substructures, plaintiffs were not engaged in work upon a subject of commerce, but, at best, upon an instrumentality of commerce. They were engaged in the construction of bridge abutments and the repair of bridge sub-

structures and were not functioning in the production of goods destined for interstate shipment. (*Fleming* v. *Arsenal Building Corporation*, 38 F. Supp. 207; *Killingbeck* v. *Garment Center Capitol, Inc.*, 259 App. Div. 691.) Nor were these plaintiffs employees of a manufacturer engaged in the production of goods for commerce. The defendant here was merely a contractor engaged in local construction and repair work for the railroad corporation.

The judgment dismissing the complaint upon the merits should be affirmed, with costs.

CRAPSER and FOSTER, JJ., concur; BLISS, J., dissents and votes to reverse, with an opinion in which HILL, P. J., concurs.

BLISS, J. (dissenting). This action is brought by the plaintiff in behalf of himself and thirty-three other employees of the defendant to recover pay and a half for overtime worked by them in excess of the forty-four-hour week prescribed by the United States Fair Labor Standards Act of 1938 (U. S. Code, tit. 29, § 216) together with liquidated damages under the act.

The facts are stipulated. Defendant had a contract with the New York Central Railroad Company as lessee of the Boston and Albany Railroad Company for the construction of new abutments under two railroad bridges and repairing the substructures of two other bridges. These abutments had been completely washed out and destroyed and the substructures of the other bridges had been damaged by the flood of September, 1938. The construction of the new abutments constituted about two-thirds of the total work performed by the defendant under this contract and the repairs of the substructures of the other two bridges constituted the remainder of the work. The Boston and Albany Railroad operated trains between New York and Massachusetts over these four bridges and its tracks were carried on the superstructures of all of the bridges while the new abutments were being built at two of the bridges and the repairs were being made to the substructures of the other two, but the new abutments were not used to support the superstructures of the two bridges, nor the railroad roadbed, nor by the railroad company in any way at any time while defendant was engaged in the performance of the work under the contract. After all of the work under the contract had been completed the railroad company inspected and accepted it and thereafter the railroad lowered the superstructures of the two bridges upon the new abutments and all of the bridges have been used by the railroad ever since and over which it has operated trains between New York and Massachusetts. In the performance of the work under the contract the plaintiff and the workmen whom he repre-

sents worked overtime in excess of forty-four hours per week. Apparently they were paid for this overtime at their regular hourly rate instead of the pay and a half for overtime claimed by them.

The plaintiffs base their claim upon the Federal Fair Labor Standards Act of 1938 (U. S. Code, tit. 29, chap. 8). Section 6 of this act (U. S. Code, tit. 29, § 206) provides that every employer " shall pay to each of his employees who is engaged in commerce or in the production of goods for commerce, wages at " certain rates. Section 7 (U. S. Code, tit. 29, § 207) provides that no employer shall, with certain exceptions not applicable here, " employ any of his employees who is engaged in commerce or in the production of goods for commerce " for a work week longer than forty-four hours during the first year from the effective date of the statute unless such employee receives compensation for his employment in excess of these hours at a rate not less than one and one-half times the regular rate at which he is employed. The term " commerce " as used in this statute is defined to include transportation, transmission or communication among the several States (§ 3 [U. S. Code, tit. 29, § 203]), or what would be commonly termed " interstate commerce." This case thus crystallizes upon a determination as to whether or not these employees were engaged in transportation among the several States, which is interstate commerce, for it is obvious that they were not engaged in the production of goods for interstate commerce.

That the railroad with which the defendant had its contract was engaged in interstate commerce is not and cannot be questioned. Likewise it is now no longer open to doubt that the construction of new bridges which may be later dedicated to use in interstate commerce is not in itself interstate commerce. Such construction is said to be local in its operations and not interstate. (*Raymond* v. *C., M. & St. P. R. Co.*, 243 U. S. 43; *General Railway Signal Co.* v. *Virginia*, 246 id. 500; *McKee* v. *Ohio Valley Electric R. Co.*, 78 W. Va. 131; 88 S. E. 616.)

The case of *Pedersen* v. *D., L. & W. R. R. Co.* (229 U. S. 146) seems to be controlling here. It was there held that the work of keeping a railroad bridge in repair while used by a railroad in interstate commerce is so closely related to such commerce as to be in practice, and in legal contemplation, a part of it. The court said: " That the defendant was engaged in interstate commerce is conceded, and so we are only concerned with the nature of the work in which the plaintiff was employed at the time of his injury. Among the questions which naturally arise in this connection are these: Was that work being done independently of the interstate commerce in which the defendant was engaged, or was it so closely

connected therewith as to be a part of it? Was its performance a matter of indifference so far as that commerce was concerned, or was it in the nature of a duty resting upon the carrier? The answers are obvious. Tracks and bridges are as indispensable to interstate commerce by railroad as are engines and cars, and sound economic reasons unite with settled rules of law in demanding that all of these instrumentalities be kept in repair. The security, expedition and efficiency of the commerce depends in large measure upon this being done. Indeed, the statute now before us proceeds upon the theory that the carrier is charged with the duty of exercising appropriate care to prevent or correct ' any defect or insufficiency * * * in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment ' used in interstate commerce. But independently of the statute, we are of opinion that the work of keeping such instrumentalities in a proper state of repair while thus used is so closely related to such commerce as to be in practice and in legal contemplation a part of it. The contention to the contrary proceeds upon the assumption that interstate commerce by railroad can be separated into its several elements and the nature of each determined regardless of its relation to others or to the business as a whole. But this is an erroneous assumption. The true test always is: Is the work in question a part of the interstate commerce in which the carrier is engaged? (See *McCall* v. *California*, 136 U. S. 104, 109, 111; *Second Employers' Liability Cases* [*Mondou* v. *New York, N. H. and H. R. R. Co.*], 223 U. S. 6, 59; *Zikos* v. *Oregon R. & Navigation Co.*, 179 Fed. 893, 897, 898; *Central R. Co. of N. J.* v. *Colasurdo*, 192 Fed. 901; *Darr* v. *Baltimore & O. R. Co.*, 197 Fed. 665; *Northern Pacific R. Co.* v. *Maerkl*, 198 Fed. 1.) Of course, we are not here concerned with the construction of tracks, bridges, engines or cars which have not as yet become instrumentalities in such commerce, but only with the work of maintaining them in proper condition after they have become such instrumentalities and during their use as such."

The bridges which were being repaired by the plaintiff and others employed by the defendant had already been dedicated to and used in interstate commerce. They had become instrumentalities of such commerce. Keeping them in a usable condition was necessary to the interstate commerce in which the railroad was engaged. When portions of them were destroyed or no longer usable, it was necessary to replace them with new parts and the installation of these new parts cannot be put in the same class as the building of a wholly new structure. We conclude, therefore, that the installation of these new abutments and repairs to the

substructures were acts which were so closely related to the interstate commerce in which the structures were already being used as to be a part of it.

The Fair Labor Standards Act makes the employee's duties the test as to whether the act applies. The fact that the railroad had entered into a contract for the repair of these bridges with an independent contractor, does not deprive workmen engaged in the work of the benefits of the act. (*State* v. *Bates & Rogers Const. Co.*, 91 Wash. 181; 157 P. 482.) If this were not so, it would be possible for a railroad engaged in interstate commerce to thus contract with an independent contractor for the performance of many other of its operations in interstate commerce and thus avoid Federal jurisdiction over such operations. As was stated in the *Pedersen* case and quoted above: " The true test always is: Is the work in question a part of the interstate commerce in which the carrier is engaged? " The conclusion here seems irresistible that the workmen who were repairing these four railroad bridges were actually participating in the interstate business of the railroad. If these workmen were employed by the railroad itself there would be no question but that they were engaged in interstate commerce, because they were repairing structures already being used in such commerce and such work was so closely connected with the interstate commerce of the railroad as to be a part of it. The intrinsic nature and indispensable character of such work to interstate transportation were not altered by the interposition of the fact that such work was being performed through an independent contractor. It was still as much a part of and necessary to interstate commerce as it would have been if the railroad were doing the work itself. If we are correct in this conclusion then clearly the men who were repairing the bridges came within the provisions of the Federal Fair Labor Standards Act as they were engaged in interstate commerce.

The judgment should be reversed on the law and facts, with costs, and judgment directed for the plaintiff.

HILL, P. J., concurs.

Judgment dismissing the complaint affirmed, with costs.