This is a suit by a laborer against his employer for additional wages based upon the Fair Labor Standards Act of 1938, Public Act No. 718, Chapter 676, 75th Congress, 3rd Session, 52 Stat. 1060-1069, 29 U.S.C.A. §§ 201-219, commonly called the Wage and Hour Law.
William Shannon was employed by the Boh Bros. Construction Company, a Louisiana corporation, at various times during the years 1938, 1939 and 1940, to work on three highway projects which the construction company had undertaken, under three separate contracts with the Louisiana Highway Commission. These projects are known as "Highway Route C-1500 Project State (Bond) 3611-C-2, Federal Aid Project No. 194-A", which we shall hereafter refer to as the Shrewsbury-Kenner Project; "Route C-1500 and C-1545 Project (Bond L.S.) 4508-CRT. 1.", hereafter called the Tulane Avenue project; and "Route 1 Project (Bond) 5300-A", which we shall call the Arabi-Chalmette Project. Petitioner's claim is detailed in his petition as follows:
"Wages due under contract on "Kenner-Shrewsbury Project .................. $449.46 "Overtime due on Kenner-Shrewsbury project .. 48.15 "Overtime due on Tulane Avenue project ...... 172.47 "Overtime due on Arabi-Chalmette project .... 11.63 "Overtime due on Arabi-Chalmette project .... 35.25 "Liquidated damages ......................... 267.50 ---------- $984.46"
In addition plaintiff asks for interest and reasonable attorneys' fees and other penalties as provided by Act 150 of the Louisiana Legislature of 1920.
The defendant admitted the correctness of the plaintiff's figures, but denied that the Wage and Hour Law applied and filed a plea of prescription of one year in bar of plaintiff's effort to recover any wages for services performed on any of the projects mentioned more than one year before the institution of the suit, which was filed on April 24, 1940.
There was judgment below dismissing plaintiff's demand and he has appealed.
The Federal statute contains within itself no limitation as to the time within which an employee must bring his action. In this situation the prescription established by the State in which the suit is brought is applicable.
In McClaine v. Rankin, 197 U.S. 154, 25 S.Ct. 410, 411, 49 L.Ed. 702, 3 Ann.Cas. 500, a suit involving the liability of shareholders in National Banks, the Supreme Court said:
"It is conceded that, in the absence of any provision of the act of Congress creating the liability, fixing a limitation of time for commencing actions to enforce it, the statute of limitations of the particular state is applicable."
See, also, Wilkerson v. Swift Co., D.C.Tex. 1941, 4 Labor Cases, par. 60,518; Redfern, etc., v. Jax Beer Co., D.C.Tex. 1941, 4 Labor Cases, par. 60,402; Duncan v. Montgomery, Ward 
Co., D.C.Tex. 1941, 42 F. Supp. 879; Owin v. Liquid Carbonic Corp., D.C.Tex. 1941, 42 F. Supp. 774; Collins v. Hancock, D.C.La. 1941, 4 Labor Cases, par. 60,712; Divine v. Levy, D.C.W.D.La., Shreveport Div., 45 F. Supp. 49.
Article 3534 of the Revised Civil Code of Louisiana reads in part as follows:
"The following actions are prescribed by one year:
* * *
"That of workmen, laborers and servants, for the payment of their wages".
And Article 3536 provides that "the following actions are also prescribed by one year: * * * that for damages * * * resulting from offenses or quasi offenses".
Plaintiff contends that if the prescription of one year is applicable it does not begin to run until such time as he had knowledge of his rights which he testifies was about Christmas, 1939, consequently, since the suit was filed on April 24, 1940, it was in time. He cites in support of his position the case of Walter v. Caffall, 192 La. 447, 188 So. 137, 143, where our Supreme Court said:
"This Court is of the opinion that the plaintiffs under the circumstances disclosed in this record come within the rule that *Page 544 
prescription does not run against one who is ignorant of the existence of facts that would entitle him to bring a suit, when such ignorance is not wilful and does not result from negligence. Simply because these facts may have been obtained at a particular place or in a particular manner, and the plaintiffs did not happen to make a search in that particular place and especially since they had never been put on notice and were wholly ignorant of the existence in any place of the facts upon which to base an action, this Court does not think their ignorance is wilful nor the result of any negligence on their part."
The knowledge which plaintiff claims he did not possess was that concerning his statutory rights and the obligation of the contractor under Federal Law, to post a minimum wage schedule. It is apparent that the knowledge which plaintiff did not have concerned a question of law and not of fact and it results that the situation discussed in the Walter case did not obtain here. Ignorantia Legis Neminem Excusat.
It appears from the tabulated list attached to plaintiff's petition that the last work performed by plaintiff on the Kenner-Shrewsbury project was December 17, 1938, consequently, plaintiff's entire claim for overtime on this project is prescribed. On the Tulane Avenue project plaintiff began work on January 7, 1939, and concluded on July 8, 1939, therefore, so much of his claim for overtime as was due prior to April 24, 1939, is also prescribed. On the Arabi-Chalmette project none of the claim is prescribed since plaintiff began work on July 30, 1939, and finished on December 23, 1939.
The claim for liquidated damages which, it is contended, differs materially from that for wages, and attorneys' fees is likewise prescribed.
In Divine v. Levy, supra, Judge Porterie, of the United States District Court for the Western District of Louisiana, said:
"Wages earned prior to September 21, 1939, were earned more than one year before the filing date of the suit of plaintiff. Article 3534 of the Civil Code of Louisiana applies and the wages (overtime included) earned prior to September 21, 1939, are barred by limitation.
"The language taken from Section 16 (b) of the Act, 29 U.S.C.A. § 216 (b), `and in an additional equal amount as liquidated damages' means `damages' and does not mean a `penalty,' though the Act is headed at Section 16 as `Penalties'. Article 3536 of the Civil Code of Louisiana, which includes in the classification of actions prescribed by one year those resulting from offenses or quasi-offenses, applies, and the plaintiff is denied, also, the `additional equal amount.' * * *".
Judge Mills of the First Judicial District Court for the Parish of Caddo, State of Louisiana, in Collins v. Hancock, supra, said:
"The demand is for overtime, double the amount and attorneys fee as provided in the Fair Labor Standards Act of 1938 [29 U.S.C.A. § 201 et seq.]
* * *
"Defendant pleads the prescription of one year provided in Article 3534 of the Civil Code for wages of workmen and laborers, and in Article 3536 for damages arising from offenses and quasi offenses.
* * *
"I am satisfied that the overtime is wages due under the contract, and is subject to the one year prescription fixed by Article 3534 of the Civil Code.
"The double amount claimed presents a different problem.
* * *
"While the allowance of an equal amount appears in Section 16 under the heading of `Penalties' the act specifically says that it is allowed as liquidated damages. It follows that the amount claimed constitutes damages and not as penalty. It is governed by the articles of the Code referring to offenses and quasi-offenses and is not a penalty for a criminal act. It is subject to the prescription of one year fixed by Article 3536 of the Civil Code."
There remains for consideration the plaintiff's claim for overtime and damages based on work performed on the Tulane Avenue project from April 25th, to July 8th, 1939, and for the Arabi-Chalmette project, which claims, as we have said, are not affected by the plea of prescription.
The Wage and Hour Act is applicable to individual employees engaged in interstate commerce or for the production of goods for interstate commerce. See sections 3 (b), 6 (a) and 7 (a), 29 U.S.C.A. §§ 203 (b), 206 (a), 207 (a). Commerce, according to Section 3 (b), means "trade, commerce, *Page 545 
transportation, transmission, or communication among the several States or from any State to any place outside thereof".
Shannon was employed by the defendant in the construction of the Tulane Avenue project which involved the building of a city street which, after its completion, became a link in the Louisiana State Highway System, but which, at the time Shannon worked on it, was a City Street subject only to the authorities of the City of New Orleans. The argument is that Tulane Avenue is a component part of the highway system of the State of Louisiana and that the work in which plaintiff was engaged constituted the improvement of that highway and that since highways are essential and indispensable for commerce between the States, the plaintiff was engaged in interstate commerce.
The authorities with respect to the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., have made a distinction in the case of railroads between new construction and repairs and maintenance. For example, employees engaged in the repair of a railroad bridge are protected by the Employers' Liability Act. Bravis v. Chicago, M. St. P. Railway Company, 8 Cir., 217 F. 234, whereas those engaged in the construction of a new railroad tunnel are not. Raymond v. Chicago, M. St. P. Railway Company,243 U.S. 43, 37 S.Ct. 268, 61 L.Ed. 583. It is said that these cases are not applicable here because railway employees are considered covered by the Employers' Liability Act because of the interstate character of their employer's business, whereas under the Wage and Hour Law the employer's business is immaterial, the criterion being the occupation of the employee. It seems to us, however, that judicial interpretations of interstate commerce, no matter how provoked, are as pertinent to the consideration of the Wage and Hour Law as they would be to any other statute where the question is whether the employer or employee is employed in interstate commerce.
The Supreme Court of Mississippi in Gulf Mobile Northern Railroad Company v. Madden, 190 Miss. 374, 200 So. 119, 122, said:
"But, the cases are in substantial agreement that employes engaged in the original construction of roadbeds or tracks to be used in interstate commerce are not engaged within the meaning of the statute, while on the other hand those employed in the repair or maintenance of interstate railroad tracks are within the Act. The difficulty is in applying the distinction between construction and repair to a given state of facts. Ordinarily, what is meant by repairs is that there is a restoration of an originally existing condition, but in practical conduct repairs often involve more or less construction, and a betterment or improvement as compared with the original condition.
"But when the work being done is well beyond any such proportion as may be fairly ascribed to the concept of a repair, then it must go over into the classification as construction. Here the old roadbed was practically on a level with the adjacent territory. The old roadbed, for more than half a mile, had been released from the operation of trains for a period of several months, and for more than two months when this accident occurred, and all the trains were being operated over a detour track west of and parallel to the old roadbed. They were not repairing the old roadbed or track, but they were super-imposing upon this old roadbed a new construction consisting of a fill not theretofore existing which reached at the bridge a height of nine feet, and at this point, and as an essential part of the new work, there was a new bridge, none ever having been there before."
Whether the work on the Tulane Avenue and Arabi-Chalmette projects should be regarded as new construction or repairs is in dispute. There is no doubt but what Tulane Avenue, as a thorough-fare, existed long before the Boh Bros. Construction Company undertook the contract, in the performance of which plaintiff was engaged. Plaintiff's employer's contract called for the tearing up of the old pavement and the laying of new pavement much wider than the original, as well as the installation of new drainage, new sidewalks, gutter bottoms and curbs, an operation involving so much repair and reconstruction as to justify the description of new work. Moreover this City street did not become a part of the State Highway System until sometime later when an overpass was constructed connecting it with the "Airline Highway". Doubtless Tulane Avenue, as well as other streets of the City of New Orleans, had long been used by trucks and automobiles beginning, continuing, or ending an interstate journey, but we cannot say that such *Page 546 
use would have the effect of making it indispensable to the conduct of such commerce with the result that a workman engaged in the repair and reconstruction of the street would be considered as employed in interstate commerce. To begin with it is going very far to say that a city street, even when it has been officially designated as a component part of a State highway, is an instrument of interstate commerce. We would certainly not wish to go any farther than the authorities justify.
In the case of Pedersen v. J.F. Fitzgerald Construction Company, 173 Misc. 188, 18 N.Y.S.2d 920; Id., Nov. 12, 1941,262 App. Div. 665, 30 N.Y.S.2d 989, 991, a case much criticized by counsel for plaintiff, it was held that an employee injured in the construction of new abutments to a railroad bridge, destroyed by flood, was not engaged in interstate commerce, it appearing that the abutments were not used, during their constructions, by the railroad. We quote the following from that opinion:
"While the railroad company was obviously engaged in interstate commerce, the defendant was an independent contractor employed by the railroad to perform work clearly local in its character and separate and distinct from such commerce. Browning v. Waycross,233 U.S. 16, 22, 34 S.Ct. 578, 58 L.Ed. 828. * * *
"We have no such situation as found in Pedersen v. Delaware, L. W.R. Co. 229 U.S. 146, 33 S.Ct. 648, 57 L.Ed. 1125, Ann.Cas.1914C, 153, for there the work was being prosecuted by a railroad engaged in interstate commerce and the work was so clearly connected with it as to be a part thereof. Here, the defendant was not engaged in interstate commerce and was simply performing local construction work which was neither an interstate occupation nor commerce. General Ry. Signal Co. v. Commonwealth of Virginia ex rel. State Corporation Commission,246 U.S. 500, 38 S.Ct. 360, 62 L.Ed. 854.
"Interstate commerce means interstate commercial intercourse, and while defendant, pursuant to its contract, was engaged in work upon an instrumentality of interstate commerce, the performance of such work does not constitute such commerce. McKee v. Ohio Valley Electric R. Co., 78 W. Va. 131, 88 S.E. 616.
"The remaining question as to whether or not plaintiffs were engaged in the production of goods for commerce must necessarily be answered in the negative. The construction of new abutments and the making of repairs to the superstructures of the railroad bridges did not constitute `the production of goods for commerce' within the meaning of the act."
As to the Arabi-Chalmette project it involved the construction of a new two-lane paved roadway extending from the Orleans-St. Bernard Parish boundary line to State Highway No. 61 in St. Bernard Parish and when it was completed it became a part of the State Highway System. The same comment may be made with respect to this road which we made concerning the Tulane Avenue project to the effect that it did not become a part of the highway system until after its completion, consequently, while plaintiff was engaged in building the road it was purely a local project.
It results from what we have said that plaintiff's case must fail, consequently, and
For the reasons assigned the judgment appealed from is affirmed.
Affirmed.