## ENGEBRETSEN v. E. J. ALBRECHT CO.
### No. 8748.

Circuit Court of Appeals, Seventh Circuit.
June 29, 1945.

As Amended on Denial of Rehearing
July 23, 1945.

Paul G. Sullins, of Chicago, Ill., for appellant.

Hirsch E. Soble, of Chicago, Ill., for appellee.

Before EVANS, and MAJOR, Circuit Judges, and LINDLEY, District Judge.

EVANS, Circuit Judge.

Appellant presents two questions. They involve the construction and application of the Fair Labor Standards Act. They are (a) the soundness of the fact finding that appellant worked fifteen hours a day instead of the fifteen and a half hours he alleged, and (b) the correctness of the court's conclusion that appellant's employment did not fall within the scope of the Act.

The trial court found against plaintiff and dismissed his complaint at the close of plaintiff's evidence.

■ The Facts. Appellant worked as a watchman and janitor at appellee's place of business in Chicago. Appellee's business, briefly stated, was that of engineering and construction. It designed and built dams, etc., without the state of Illinois, as well as within. Appellant worked for appellee from October 24, 1938 to July 15, 1943. He makes no claim for overtime for the period from January 1, 1941 to the end of his employment, because he was paid for that period in accordance with the provisions of the statute. He received no overtime payment for the balance of the period.

Appellant says he began work at 4:30 P.M. and quit work at 8 A.M. Appellee claims he began work at 5 P.M. and that one-half hour was consumed in sleeping or at lunch. Appellant says he never slept on the premises, and he took only fifteen minutes for lunch. Appellant's tasks were— sweeping the ten room office building, dusting, cleaning up generally, answering phone calls, and also, he devoted about a half hour out of every two to inspection tours of the premises in his capacity as guardsman or watchman.

Appellant never complained that his pay check was short for the daily half hour. There was also dispute as to his wages for the month of December, 1940. He could not remember when time and a half for overtime payment began, although the check stubs indicated it was December rather than January. He was paid 30 cents an hour, and no payment for overtime for most of the period.

■ We are not justified in disturbing the trial court's finding that appellant worked 15 hours a day rather than 15½ hours for the period involved. The evidence was conflicting.

The sharply contested issue is over the applicability of the Fair Labor Standards Act to appellant. The controlling sections of the Act read, Title 29, U.S.C.A.

Sec. 206. "Every employer shall pay to each of his employees who is engaged in commerce or in the production of goods for commerce wages at the following rates— * * *."

Sec. 203(b): " 'Commerce' means trade, commerce, transportation, transmission, or communication among the several States or from any State to any place outside thereof."

Sec. 203(j): " * * * for the purposes of this chapter an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, *or in any other manner working on such goods, or in any process or occupation necessary to the production thereof,* in any State * * *."

The trial court found that in the prosecution of its business, during the period between October 24, 1938 and January 1, 1941,

" * * * defendant moved its construction equipment from or to Chicago as follows: (a) some small tools and supplies were sent from Chicago to Johnstown in September, 1939; (b) some small tools were sent from Arkport to Chicago, but the time of shipment does not appear; (c) seven tractors, 2 cranes, and small tools were sent from Sardis to Chicago in or about November, 1939; (d) some small tools were sent from Stickney to Chicago during the life and at the completion of the Stickney job."

The court also found:

"7. Plaintiff was not employed or engaged in the production of goods for commerce, or in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any process or occupation necessary to the production thereof.

"8. Plaintiff was not employed or engaged in trade, commerce, transportation, transmission or communication among the several states or from any state to any place outside thereof."

It appeared from the record that

" * * * said place of business consisted of several offices, and also a repair shop and yard in which machinery used on different jobs was repaired and reconditioned. That said machinery consisted of construction machinery, such as steam shovels, graders, concrete mixers, cranes, etc., which was brought back to defendant's principal place of business in Chicago upon the completion of construction jobs in a state other than the State of Illinois, where it was repaired, over-hauled, and reconditioned, and which said machinery was thereafter transported to other states than the State of Illinois and used in the construction of viaducts on interstate high-

ways and in the construction of dams and flood control work and in the straightening of rivers, as herebefore alleged. Also, in its yard defendant at all times maintained certain quantities of lumber, which was shipped from said yard outside the State of Illinois for use on certain of said construction jobs in other states."

Also that there were employees who worked in the day time, who repaired broken parts, "fixed up," cleaned, and oiled the machinery and the tools stored on the premises.

As to the nature of defendant's business, the trial court found:

" * * * defendant was engaged in the performance of certain construction jobs, i.e., one at Stickney, Illinois; a dam at Arkport, New York; the outlet works of a dam at Sardis, Mississippi; and a river improvement job at Johnstown, Pennsylvania. * * * There is no evidence that the rivers upon which said work was done were navigable, or that they extended between states, or that the work was done for the purposes of commerce, or that it was anything but purely local construction work."

Concluding that appellant "was not employed or engaged in commerce, or in the production of goods for commerce, within the meaning of the Fair Labor Standards Act of 1938," the District Court dismissed the suit. This appeal resulted.

If appellant was an employee whose work or employment came within Secs. 203(b) or 203(j) then he was entitled to one and a half pay for the overtime work, for which he did not receive *one and a half* payment.

Did plaintiff's work bring him within the provisions of Secs. 203(b) or 203(j)?

Specifically, we must construe and apply the clause "employee who is engaged in commerce or in the production of goods for commerce," or whose occupation is "necessary to the production thereof * * *."

It has been held that an employee who acts as a guard is engaged in the production of goods in commerce, if the employer is so engaged. Kirschbaum v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638; Walling v. Southern Package Corporation, 320 U.S. 540, 64 S.Ct. 320, 88 L.Ed. 298; Armour & Co. v. Wantock, 323 U.S. 126, 65 S.Ct. 165. It has also been held that a messenger for a telegraph company in de-

livering telegraph messages is not an employee engaged in "the production of goods for commerce" within Section 12 of the Act. Western Union Telegraph Co. v. Lenroot, 323 U.S. 493, 65 S.Ct. 335, 338.

The Supreme Court had previously proceeded with relative unanimity in determining who were under and who were outside the protection of the Act. Armour & Co. v. Wantock, 323 U.S. 126, 65 S.Ct. 165; Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460; Higgins v. Carr Bros. Co., 317 U.S. 572, 63 S.Ct. 337, 87 L.Ed. 468; Kirschbaum v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638; Overnight Motor Co. v. Missel, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682.

The case of Western Union Telegraph Co. v. Lenroot, however, resulted in a sharp division of the Court. In the Circuit Court of Appeals an united court held (2 Cir., 141 F.2d 400) that a telegraph company messenger was within the protection of the Act. In other words, it held a telegraph company was engaged in commerce and in the production of goods for commerce. The majority of the Supreme Court (a 5 to 4 decision) reversed this holding. The acuteness of the difference is shown by the fact that both sides charged the other with reaching its conclusion "by a series of interpretations so far-fetched and forced as to bring into question the candor of Congress as well as the integrity of the interpretative process."

However sharply drawn the controversy and the closeness of the decision in said case, and regardless of any opinion which we may have entertained in the absence of such decision, we accept the conclusion reached by the majority as the law of that case. Yet, the character of the services rendered by a telegraph operator or messenger differs quite materially from the kind of service which was rendered by appellant herein. Likewise services of a telegraph company are substantially different from those which marked the activity of the appellee. Hence the Lenroot case furnishes light but does not control disposition of the instant case.

Under the plain language of the statute and under the decisions we are convinced that plaintiff was required to show: (a) that he was an employee, (b) his employer was engaged in the production of goods for commerce, and his was an occupation necessary to such produc-

tion; or, that he was (a) an employee (b) who is engaged in commerce.

 In reaching our conclusion we must look to the employee's activity rather than the employer's activity, so far as "engaged in commerce" determines liability. Overstreet v. North Shore Corporation, 318 U.S. 125, 63 S.Ct. 494, 87 L. Ed. 656; McLeod v. Threlkeld, 319 U.S. 491, 63 S.Ct. 1248, 87 L.Ed. 1538. However, where the employer is engaged in the production of goods for commerce, we need look only to see if the employee's work is essential thereto.

That he was an employee is not in dispute. That the character of his employment, namely, that of a guard, brought him within the language of the statute, we think clear, *provided the company was engaged in the production of goods for commerce.*

 Justice Frankfurter, speaking for the Court in Kirschbaum Co. v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 1118, 86 L.Ed. 1638, eliminated various questions which previously were open. We quote at length from this opinion, for it must be our guide:

"To search for a dependable touchstone by which to determine whether employees are 'engaged in commerce or in the production of goods for commerce' is as rewarding as an attempt to square the circle. * * *

"The history of the legislation leaves no doubt that Congress chose not to enter areas which it might have occupied. * * *

"Since the scope of the Act is not coextensive with the limits of the power of Congress over commerce, the question remains whether these employees fall within the statutory definition of employees 'engaged in commerce or in the production of goods for commerce,' construed as the provision must be in the context of the history of federal absorption of governmental authority over industrial enterprise. * * *

"But the provisions of the Act expressly make its application dependent upon the character of the employees' activities. And, in any event, to the extent that his employees are 'engaged in commerce or in the production of goods for commerce,' the employer is himself so engaged. Nor can we find in the Act, as do the petitioners, any requirement that employees must themselves participate in the physical process of the making of the goods before they can be regarded as engaged in their production. * * *

"In our judgment, the work of the employees in these cases had such a close and immediate tie with the process of production for commerce, and was therefore so much an essential part of it, that the employees are to be regarded as engaged in an occupation 'necessary to the production of goods for commerce.' What was said about a related problem is not inapposite here: 'Whatever terminology is used, the criterion is necessarily one of degree and must be so defined. This does not satisfy those who seek for mathematical or rigid formulas. But such formulas are not provided by the great concepts of the Constitution such as "interstate commerce," "due process," "equal protection." In maintaining the balance of the constitutional grants and limitations, it is inevitable that we should define their applications in the gradual process of inclusion and exclusion. There is thus no point in the instant case in a demand for the drawing of a mathematical line. And what is reasonably clear in a particular application is not to be overborne by the simple and familiar dialectic of suggesting doubtful and extreme cases.' Santa Cruz Co. v. National Labor Relations Board, 303 U.S. 453, 467, 58 S.Ct. 656, 660, 82 L.Ed. 954. 'What is needed is something of that common-sense accommodation of judgment to kaleidoscopic situations which characterizes the law in its treatment of problems of causation.' Gully v. First National Bank, 299 U.S. 109, 117, 57 S.Ct. 96, 100, 81 L.Ed. 70.

The final holding of the court with only one dissenting opinion was that engineers, firemen, elevator operators, watchmen, repair carpenters, and porters, who were all engaged in a building wherein some tenants were engaged in commerce, were within the protection of the Act.

 Was plaintiff employed in "production, manufacture, mining, handling, transporting, or any other manner working on such goods, or in any process or occupation necessary to the production thereof, in any State"?

The answer must be in the affirmative if the defendant's other employees were so engaged. He, being a guard, was not so employed if his activities be separately considered. But, as he guarded all the property used by the other employees, if they were engaged in the production of

goods for commerce as that term is defined, he would be so employed.

And so, the determinative answer to the determinative question becomes one of fact. The defendant used its employees and its tools and machinery (which plaintiff guarded) in construction work,—to build dams, to make river improvements, to build a viaduct on an interstate highway and in different states.

This work resulted in the production and shipping of "goods" a term of broad and inclusive implications, so it is argued. Such goods were the implements of . the job to be done; they 'were repaired and overhauled in the Chicago plant and shipped for use on jobs in other states. But were the dams, river improvements, viaducts on highways, "goods in commerce"?

The majority of the court is of the opinion that dams, viaducts on the highway, and river improvements as such, do not come within the meaning of the word "goods" as that word is used in this statute. We are, however, agreed that disposition of the case must be the same; provided we are satisfied that defendant was engaged in the production of goods for commerce.

Even though the viaducts on the highway and river improvements are not goods in commerce, employees engaged in maintaining and repairing such facilities, to-wit: vehicular roads and bridges and viaducts, are engaged in commerce.

In Overstreet v. North Shore Corporation, 318 U.S. 125, 63 S.Ct. 494, 497, 87 L. Ed. 656, the court said:

"Vehicular roads and bridges are as indispensable to the interstate movement of persons and goods as railroad tracks and bridges are to interstate transportation by rail. If they are used by persons and goods passing between the various States, they are instrumentalities of interstate commerce. * * * Those persons who are engaged in maintaining and repairing such facilities should be considered as 'engaged in commerce' even as was the bolt carrying employee in the Pedersen case (Pedersen v. Delaware, L. & W. R. Co., 229 U.S. 146, 33 S.Ct. 648, 57 L.Ed. 1125, Ann.Cas.1914C, 153), because without their services these instrumentalities would not be open to the passage of goods and persons across state lines."

In Pedersen v. J. F. Fitzgerald Construction Co., 173 Misc. 188, 18 N.Y.S.2d 920, affirmed, 262 App.Div. 665, 30 N.Y.S.2d 989, the New York court held that building abutments and substructures under bridges to be used by a railroad in commerce did not constitute "production of goods for commerce" within the meaning of the Act since such structures are not "goods," "wares," "products," "commodities," "merchandise" or "articles or subjects of commerce" within the statutory meaning of the word "goods," and that, therefore, the contractor was not subject to the Act. This decision was reversed in Pedersen v. J. F. Fitzgerald Construction Co., 318 U.S. 740, 63 S.Ct. 558, 87 L.Ed. 1119, modified in 318 U.S. 742, 63 S.Ct. 558, 87 L.Ed. 1119, all without opinion, upon authority of the Overstreet case.

In Walling v. Patton-Tulley Transp. Co., 6 Cir., 134 F.2d 945, the court reversed the trial court's ruling that dike and revetment employees engaged in construction work on the Missouri and Mississippi Rivers were not within the Act because the work was local in its nature and had no direct, but merely an indirect effect on navigation. The court of appeals held that the employees were engaged in commerce within the meaning of the Act.

In Clyde v. Broderick, 10 Cir., 144 F.2d 348, the court announced the employees directly engaged in work in connection with loading and unloading of tools and equipment to be used in constructing an ammunition plant for the government were engaged in commerce.

In Slover v. Wathen, 4 Cir., 140 F.2d 258, a night watchman of a pier to which interstate barges were tied was held engaged in interstate commerce and within the protection of the Act inasmuch as the barges moved in interstate commerce, and were instrumentalities of interstate commerce.

Under repeated decisions plaintiff's employment as watchman and caretaker was of such character and so intimately connected with the tools and equipment which passed into interstate commerce that it can be properly held that his services were so essential to such commerce as to become a part thereof and that the transportation of the equipment in commerce and their storage, repair and care were all an essential part of the production of goods for commerce in which the employer was engaged.

There exists no sound question over the character of plaintiff's services. Clearly

they were an essential part of the production of goods in commerce. See Borden Company v. Borella et al., 65 S.Ct. 1223, and 10 E. 40th Street Bldg. v. Callus, et al., 65 S.Ct. 1227.

The judgment is reversed and the cause remanded with directions to the District Court to proceed in accordance with the views expressed in this opinion. Appellant shall recover his costs in this Court.

MAJOR, Circuit Judge (concurring in the result).

In my opinion, the dams, river improvements and viaducts are not goods produced for commerce within the meaning of the Act. I am of the view, however, that the repair and servicing of defendant's tools and equipment in its Chicago plant constituted the production of goods for commerce, as that term is defined by Sec. 3(j) of the Act, 29 U.S.C.A. § 203(j). Such being the case, plaintiff performed a service essential to such production and was entitled to recover. I would reverse solely on this ground.