## BENNETT v. V. P. LOFTIS CO.
### No. 5707.

Circuit Court of Appeals, Fourth Circuit.
April 5, 1948.

Ellis Nassif, of Raleigh, N. C., for appellant.

Frederick U. Reel, Atty. U. S. Department of Labor, of Washington, D. C. (William S. Tyson, Sol., and Bessie Margolin, Asst. Sol., both of Washington, D. C., U. S. Department of Labor, and Beverly R. Worrell, Regional Atty., U. S. Department of Labor, of Birmingham, Ala., on the brief), for Administrator of Wage and Hour Division, United States Department of Labor, amicus curiae.

Charles Ross, of Lillington, N. C., for appellee.

Before PARKER and SOPER, Circuit Judges, and BARKSDALE, District Judge.

BARKSDALE, District Judge.

The plaintiff, D. R. Bennett, an employee, instituted this action in the District Court of the United States for the Eastern District of North Carolina, under the provisions of Section 16(b) of the Fair Labor Standards Act of 1938, 52 Stat. 1060, 29 U.S.C.A. § 201 et seq., to recover of his employer, V. P. Loftis Company, defendant, compensation for overtime alleged to be due him under Section 7 of the Act, and unpaid, together with liquidated damages and an attorney's fee. The District Court tried the case upon stipulated facts, and being of the opinion that the plaintiff was not engaged "in commerce", dismissed his complaint.

The facts are that during the period in controversy, the plaintiff was employed as a night watchman by the defendant in the course of the construction of a concrete bridge across Upper Little River in Harnett County, N. C., the defendant having entered into a contract with the State Highway Commission of North Carolina to construct this bridge located about 200 feet east of the pre-existing highway bridge which formed a link in U. S. Highway No. 15A. The defendant's contract did not

cover the construction of the connecting links of roadway between the new bridge and the existing highway, but it was contemplated by the State Highway Commission that, when the bridge being constructed by the defendant was completed, that roadway connecting this bridge on either side to the existing highway would be constructed, and that when such new roadway and bridge were completed, they would be substituted for the old bridge and those portions of the old highway leading to and from the old bridge. Normally, U. S. Highway 15A was an instrumentality of interstate commerce, but during the period that plaintiff was employed in the construction of the new bridge, all interstate traffic had been detoured over other state highways. The bridge upon which the plaintiff was employed was completed and opened to traffic in April following the plaintiff's discharge in July, and upon the completion of the bridge and the connecting highway, the bridge and highway were used by interstate commerce, the new bridge structure and its highway approaches being substituted for the old bridge and its highway approaches. The amount to which the plaintiff would be entitled, if he was within the coverage of the Act, was agreed upon and stipulated.

There is no contention here that the plaintiff was engaged in the "production of goods for commerce." Consequently, in order that he prevail, it must appear that he was engaged in interstate commerce. The question presented is whether an employee engaged as a night watchman during the construction of a highway bridge designed to be substituted for an old bridge which was a part of pre-existing interstate highway, was engaged "in commerce" within the meaning of the Act, although no traffic actually passed over the bridge during the period while the employee was engaged in its construction. We think this question should be answered in the affirmative.

Although the plaintiff took no part in the actual construction of the bridge in the sense of driving nails, or pouring concrete, or the like, his duties as night watchman were as necessary and as indispensable to the work as that of any other employee. Slover v. Wathen, 4 Cir., 140 F.2d 258; Milam v. Texas Spring & Wheel Co., Tex. Civ.App., 157 S.W.2d 653; Reliance Storage & Inspection Co. v. Hubbard, D.C., 50 F.Supp. 1012.

In the case of Overstreet v. North Shore Corp., 318 U.S. 125, 63 S.Ct. 494, 497, 87 L.Ed. 656, the respondent owned and operated a toll road and a draw bridge as a part of the road. This toll road and bridge were a part of an interstate highway. One of petitioners operated the draw bridge, another was engaged in maintenance and repair work on both the road and bridge, and a third sold and collected toll tickets. In holding that the petitioners were all "engaged in commerce," and therefore within the coverage of the Act, the Court said:

"Vehicular roads and bridges are as indispensable to the interstate movements of persons and goods as railroad tracks and bridges are to interstate transportation by rail. If they are used by persons and goods passing between the various States, they are instrumentalities of interstate commerce. Cf. Covington & Cincinnati Bridge Co. v. Kentucky, 154 U.S. 204, 218, 14 S.Ct. 1087, 1092, 38 L.Ed. 962. Those persons who are engaged in maintaining and repairing such facilities should be considered as 'engaged in commerce' even as was the bolt carrying employee in the Pedersen case, supra [Pedersen v. Delaware, L. & W. R. Co., 229 U.S. 146, 33 S.Ct. 648, 57 L.Ed. 1125, Ann.Cas.1914C, 153], because without their services these instrumentalities would not be open to the passage of goods and persons across state lines."

The defendant here concedes, as he is obviously required to concede in the light of the Overstreet decision, that if the plaintiff here had been engaged in the repair or reconstruction of the pre-existing bridge on Highway 15A, while traffic over it continued, he would be engaged in commerce and within the coverage of the Act. However, defendant contends that inasmuch as the bridge upon which the plaintiff was employed was a new structure, and no traffic passed over it during the period of its construction, its construction did not

constitute interstate commerce. We are of the opinion, however, that this contention overlooks the fact that the new bridge was purely and simply a replacement for the old, the abandonment of the old bridge and its approaches, the diversion of traffic, the construction of the new bridge with its approaches and their substitution for the old structures, constituting one single integrated project.

■ If the declared purpose of the Act is to be accomplished, a project should be considered as a whole, in a realistic way; not broken down into its various phases so as to defeat the purpose of the Act. This latter unrealistic approach was condemned by the Supreme Court in Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460.

Prior to the 1935 amendment, 53 **Stat.** 1404, the Federal Employers' Liability Act, 35 Stat. 65, 45 U.S.C.A. § 51 et seq., applied only to employees who were themselves engaged in interstate commerce, as well as their employers. Therefore, as was stated in Overstreet v. North Shore Corp., 318 U.S. 125, 131, 63 S.Ct. at page 498:

"The Federal Employers' Liability Act and the Fair Labor Standards Act are not strictly analogous, but they are similar. Both are aimed at protecting commerce from injury through adjustment of the master-servant relationship, the one by liberalizing the common law rules pertaining to negligence and the other by eliminating sub-standard working conditions. We see no persuasive reason why the scope of employed or engaged 'in commerce' laid down in the Pedersen and related cases, cited above, should not be applied to the similar language in the Fair Labor Standards Act, especially when Congress, in adopting the phrase 'engaged in commerce' had those Federal Employers' Liability Act cases brought to its attention."

In Pedersen v. Delaware, Lackawanna & Western R. Co., 229 U.S. 146, 33 S.Ct. 648, 57 L.Ed. 1125, Ann.Cas.1914C, 153 the court had recognized that maintenance of its roadway by a railroad was itself a part of transportation, and therefore of commerce, saying at page 151 of 229 U.S., at page 649 of 33 S.Ct.:

"Tracks and bridges are as indispensable to interstate commerce by railroads as are engines and cars; and sound economic reasons unite with settled rules of law in demanding that all of these instrumentalities be kept in repair. The security, expedition, and efficiency of the commerce depends in large measure upon this being done. Indeed, the statute now before us proceeds upon the theory that the carrier is charged with the duty of exercising appropriate care to prevent or correct 'any defect or insufficiency * * * in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment' used in interstate commerce. But independently of the statute, we are of the opinion that the work of keeping such instrumentalities in a proper state of repair while thus used is so closely related to such commerce as to be in practice and in legal contemplation a part of it. The contention to the contrary proceeds upon the assumption that interstate commerce by railroad can be separated into its several elements, and the nature of each determined regardless of its relation to others or to the business as a whole. But this is an erroneous assumption. The true test always is: Is the work in question a part of an interstate commerce in which the carrier is engaged?"

In this case, the court held that an employee carrying bolts from a tool car to a bridge over which ran an interstate track, to be used in its repair, was engaged in commerce.

In construing the Federal Employers' Liability Act, the Supreme Court laid down the following rule of construction:

"Having in mind the nature and usual course of the business to which the act relates and the evident purpose of Congress in adopting the act, we think it speaks of interstate commerce, not in a technical legal sense, but in a practical one better suited to the occasion (see Swift & Co. v. United States, 196 U.S. 375, 398, 25 S.Ct. 276, 49 L.Ed. 518, 525), and that the true test of employment in such commerce in the sense intended is, Was the employee, at the time of the injury, engaged in interstate transportation, or in work so closely

related to it as to be practically a part of it?" Shanks v. Delaware, Lackawanna & Western R. Co., 239 U.S. 556, 558, 36 S.Ct. 188, 189, 60 L.Ed. 436, L.R.A.1916C, 797.

It is true that there are some cases which, in construing the Federal Employers' Liability Act, construed the Act quite strictly against the employees, such as Shanks v. Delaware L. & W. R. Co., supra; Chicago & N. W. Ry. Co. v. Bolle, 284 U.S. 74, 52 S. Ct. 59, 76 L.Ed. 173; Chicago & E. I. R. Co. v. Industrial Commission, 284 U.S. 296, 52 S.Ct. 151, 76 L.Ed. 304, 77 A.L.R. 1367, and New York, N. H. & H. R. Co. v. Bezue, 284 U.S. 415, 52 S.Ct. 205, 206, 76 L.Ed. 370, 77 A.L.R. 1370.

In the Bezue case, the plaintiff was injured while assisting in the repair of an engine theretofore used in interstate commerce, and which, after its repair, would be put back into such service. However, the engine had been in the shop for twelve days, its fire had been dumped, and the main drive wheels and other portions needing attention had been removed and the engine was left "inert and incapable of locomotion." Although admittedly an instrumentality of commerce, the court held that inasmuch as this engine had been temporarily removed from service, those engaged in its repair were not engaged in commerce. Although the Court was construing a different Act and the facts do not bring this case precisely in point, the rationale of this case cannot be distinguished from the case here under consideration. However, we believe that our conclusion to hold that the plaintiff here was engaged in commerce within the meaning of the Fair Labor Standards Act, is to a degree buttressed by the dictum in McLeod v. Threlkeld, 319 U.S. 491, 495, 63 S.Ct. 1248, 1250, 87 L.Ed. 1538:

"The effect of the over-refinement of factual situations which hampered the application of the Federal Employers' Liability Act, prior to the recent amendment, we hope, is not to be repeated in the administration and operation of the Fair Labor Standards Act."

And the recent case of Fitzgerald Construction Co. v. Pedersen, 324 U.S. 720, 65

S.Ct. 892, 89 L.Ed. 1316, sustains our conclusion, although the lack of a clear statement of facts in this case prevented the question from being sharply presented to the Court. The agreed stipulation of facts, which contained the only facts before the court, showed that the New York Central Railway operated interstate trains over four bridges, the supporting abutments of two of which were destroyed and the substructures of the two others damaged by flood. Thereafter, the railroad entered into a contract with the defendant, an independent contractor, for the construction of entirely new abutments for the two bridges whose abutments had been washed out and destroyed, and for repairing the substructures of the other two bridges which had been damaged. Defendant employed plaintiffs in doing work under this contract. The trial court said in its opinion (Pedersen v. J. F. Fitzgerald Const. Co., 173 Misc. 188, 18 N.Y.S.2d 920, 922):

"The stipulation concedes that the new abutments, while being built by defendant, did not carry the tracks of the railroad, but that the bridges under which the substructures were being repaired did carry the tracks of the railroad during such operation."

The trial court held that the plaintiffs were not engaged in interstate commerce, those employed on the new abutments, because the abutments were "new construction" not yet used in interstate commerce, and those employed in repairing the substructures of the bridges still in use, because they were employed by an independent contractor not engaged in interstate commerce. The appellate courts of New York affirmed, and on certiorari, the Supreme Court reversed on the authority of Overstreet v. North Shore Corp., supra, and remanded the case "without prejudice to a determination of the nature of the employment of any members of the class on whose behalf this suit has been brought." Pedersen v. J. F. Fitzgerald, Const. Co., 318 U.S. 740, 742, 63 S.Ct. 558, 87 L.Ed. 1119. However, the case came back to the Supreme Court without any segregation having been made of those employees engaged in the construction of the abutments which carried no traffic and those em-

ployees engaged in repairing the substructures of the bridges which continued to bear traffic. On the second appeal, the Supreme Court affirmed the holding of the New York courts that all the plaintiff employees were engaged in interstate commerce and therefore within the coverage of the Act. The precise question of whether those employees engaged in the construction of the new abutments which carried no traffic during their construction, were engaged in interstate commerce during this period, was not discussed by the court. In the opinion, all the employees on the four bridges, the two in use, and the two withdrawn from use, were considered together. However, if the Supreme Court was of the opinion that those employees engaged in the repair of the two bridges which remained in use, were engaged in interstate commerce, and those employees engaged in constructing the abutments for the bridges temporarily not in use, were not engaged in interstate commerce, the court could have very well said so and remanded the case for a segregation of the employees engaged in the two projects. The trial court, in its original opinion (18 N.Y.S.2d at pages 921, 922), clearly pointed out that, "About two-thirds of the total work was comprised of building the abutments," of the two bridges which carried no traffic during their construction. Therefore, the Supreme Court was made aware of the fact that probably the greater number of the plaintiffs were engaged in the construction of new instrumentalities to replace old instrumentalities temporarily withdrawn from commerce, which is quite analogous to the situation presented in the instant case.

In the case of Walling v. McCrady Construction Co., 156 F.2d 932, the Third Circuit Court of Appeals reached the same conclusion as we do as to the question here presented, citing the Pedersen case as an authority for this conclusion. The Mc-Crady case involved the determination of the coverage of the Act as to a great many employees on numerous projects. Certainly at least one project is entirely analogous to the situation here presented, and the court held that the employees thereon were engaged "in commerce" and therefore embraced within the coverage of the Act. It

appears from the findings of fact (Finding of Fact No. 65, Appellee's Appendix, p. 24a) that:

"Prior to the work done by defendant and its employees under said contract, Munhall Arches viaduct carried the railroad tracks of the Union Railroad Company used in the movement of trains carrying freight in interstate commerce and in the production of goods for interstate commerce (see paragraph 63). *During the construction no railroad cars passed over the viaduct but they were detoured around them.* The reconstructed viaduct was used for the same purposes and in the same manner as the old viaduct, which had deteriorated and become unsafe for use. Thus, the new viaduct constituted a replacement of the old viaduct." (Italics supplied.)

Also in point, and taking the same view of the effect of the holding in the Pedersen case, is the decision of the Ninth Circuit Court of Appeals in Ritch v. Puget Sound Bridge & Dredging Co., 156 F.2d 334, at page 336, the court saying in its opinion:

"That the facility worked on need not be employed in commerce during its construction is held by the Supreme Court in Pedersen v. [J. F.] Fitzgerald [Const. Co.], 318 U.S. 740, 742, 63 S.Ct. 558, 87 L.Ed. 1119, where the contractors' employees were constructing new abutments for a bridge destroyed by a flood, the new abutments never having been used in interstate commerce."

See also Walling v. Patton-Tulley Transportation Co., 6 Cir., 134 F.2d 945, 947.

The defendant employer here relies upon the decision, adverse to the employee, in the case of Crabb v. Welden Bros., 8 Cir., 164 F.2d 797, the particular employee there having been engaged in the construction of the Alcan Highway, which was being built to provide an overland means of commerce between the United States and Alaska. In denying coverage, the court based its holding upon the fact that the building of this highway was new construction of a facility never before used in commerce.

The doctrine, that new construction, although intended for use in commerce, does not constitute commerce until so utilized, was recognized in Ritch v. Puget Sound &

Dredging Co., supra, and has long been established in the Federal Employers' Liability Act cases. In Pedersen v. Delaware, L. & W. R. Co., supra, the court said, at page 152 of 229 U.S., at page 650 of 33 S.Ct.:

"Of course, we are not here concerned with the construction of tracks, bridges, engines, or cars which have not as yet become instrumentalities in such commerce, but only with the work of maintaining them in proper condition after they have become such instrumentalities and during their use as such."

See also Brue v. J. Rich Steers etc., D. C., 60 F.Supp. 668; Nieves v. Standard Dredging Corp., 1 Cir., 152 F.2d 719.

This doctrine has been recognized by the Wage and Hour Division of the Department of Labor. In Paragraph 12 of Bulletin No. 5 of December 1939, it is said:

"The employees of local construction contractors generally are not engaged in interstate commerce and do not produce any goods which are shipped or sold across state lines. Thus it is our opinion that employees engaged in original construction of buildings are not generally within the scope of the Act, even if the building when completed will be used 'to produce goods for commerce.'"

However, this "new construction" doctrine has no bearing on the instant case, because the bridge here in question, although a new structure, was being built to replace an existing structure which had long been used in interstate commerce.

To hold that the plaintiff here was not engaged "in commerce," and therefore not within the coverage of the Act, would require a narrow, strained and technical interpretation of the Act. In the light of the "Congressional finding and declaration of policy" as to the Act, 29 U.S.C.A. § 202, Kirschbaum v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638; Walling v. Jacksonville Paper Co., supra, wherein the court said at page 567 of 317 U.S., at page 335 of 63 S.Ct.: "It is clear that the purpose of the Act was to extend federal control in this field throughout the farthest reaches of the channels of interstate commerce," United States v. Vogue, Inc., 4 Cir., 145 F.2d 609, and numerous other decisions, we are not disposed to place such an interpretation upon the Act.

For the reasons stated, it is our conclusion to reverse the judgment appealed from, and to remand the case to the District Court, with directions to enter judgment for the plaintiff for the agreed amount, together with a reasonable attorney's fee, as provided in the Act.

Reversed.